

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00383-CR

---

JESSIE T. MACK                                                        APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Jessie T. Mack of robbery causing bodily injury, and the trial court sentenced him to fifty years' confinement.[2]  In a single point, Mack argues that the trial court erred by denying his motion to suppress his oral statement.  We will affirm.

---

[1]See Tex. R. App. P. 47.4.

[2]Mack pleaded true to the habitual offender notice that alleged two prior felony convictions.

Stephen Salley arrived at the Lake Como Church of Christ Community of Hope retirement center on January 27, 2011, at around 9:00 p.m. to deliver prescriptions. When Salley paused at the door to recall the entry code, Mack confronted Salley and asked him to turn over his wallet. Salley declined, and Mack told him, "Give me your wallet or I'm going to shoot you." The two then began to struggle, and Mack managed to grab Salley's wallet. When Mack discovered that there was no money in Salley's wallet, Salley, who was afraid of suffering imminent bodily injury, gave Mack $20 from his pocket, and Mack fled the scene. Authorities investigating the offense obtained video surveillance from Lake Como's security cameras and arrested Mack approximately two weeks later. Detective Jerry Cedillo interviewed Mack and recorded his oral statement. During the interview, Mack initially denied any involvement in the robbery but later admitted that he took Salley's money.[3] The trial court denied Mack's motion to suppress the oral statement.

In his only point, Mack argues that the trial court erred by denying his motion to suppress the oral statement. Mack contends that the statement was involuntary and taken in violation of his due process rights under the Fourteenth Amendment and his statutory rights under code of criminal procedure article 38.22 because (1) Detective Cedillo threatened "to bring in" Mack's girlfriend if he

---

[3]Mack did not agree that he threatened to shoot Salley.

did not cooperate, (2) Mack "lacked the ability to read and write,"[4] and (3) Mack's "insight and overall cognitive abilities are below average."[5]

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The determination of whether a confession is voluntary is based on an examination of the totality of the circumstances surrounding its acquisition. *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App.), *cert. denied*, 516 U.S. 977 (1995); *Smith v. State*, 779 S.W.2d 417, 427 (Tex. Crim. App. 1989). A statement is involuntary for purposes of federal due process if the record reflects "official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained

---

[4]Mack told Detective Cedillo at the conclusion of the questioning about the robbery that he could not read.

[5]At the hearing on the motion to suppress, Mack asked the trial court to take judicial notice of a report by "Dr. Norman" opining that Mack's "ability to comprehend and make decisions is below average."

choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995); *see Oursbourn v. State*, 259 S.W.3d 159, 169–70 (Tex. Crim. App. 2008). "Absent [coercive] police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Alvarado*, 912 S.W.2d at 211 (citing *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S. Ct. 515, 520 (1986)).

Although a claim of involuntariness under code of criminal procedure article 38.22 can be predicated on police overreaching, section 6 of the article additionally encompasses subjective involuntariness claims that do not turn solely on police overreaching. *Oursbourn*, 259 S.W.3d at 172. For example, "[a] confession given under the duress of hallucinations, illness, medications, or even a private threat . . . could be involuntary under Article 38.21 and the Texas confession statute." *Id.* Thus, under a section 6 voluntariness inquiry, we may consider factors such as the suspect's youth, intoxication, mental retardation, or other disability that would not otherwise raise a federal due process claim. *Id.* at 172–73. Regarding mental impairment, "[m]ental deficiency is a factor, but not alone determinative, in ascertaining the voluntariness of a confession." *Penry*, 903 S.W.2d at 744. The question is whether the accused's impairment is so severe that he was incapable of understanding the meaning and effect of his statement. *Casias v. State*, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970).

We have reviewed Mack's recorded oral interview in its entirety. Regarding Mack's argument that Detective Cedillo threatened to arrest Mack's

girlfriend, during the interview, Detective Cedillo (a) asked Mack if his girlfriend had anything to do with the robbery, (b) told Mack that he needed to speak with his girlfriend, and (c) said that Mack's girlfriend will be "dealing" with the police if she was somehow involved in the robbery. The circumstances surrounding Detective Cedillo's questions and statements about Mack's girlfriend concerned Detective Cedillo's interest in gathering facts about the offense as part of his overall investigation. While a threat to arrest a family member can result in an involuntary confession, *see Contreras v. State*, 312 S.W.3d 566, 576–77 (Tex. Crim. App., *cert. denied*, 131 S. Ct. 427 (2010), at no point during Mack's interview did Detective Cedillo threaten to arrest Mack's girlfriend if he did not confess to committing the robbery. Indeed, Detective Cedillo testified at the hearing on the motion to suppress that at no time during the interview did he coerce or threaten Mack to convince him to give a statement.

As for Mack's argument that his statement was involuntary because of his inability to read and his reduced cognitive abilities, the recorded interview demonstrates that Mack engaged in a composed, rational conversation with Detective Cedillo for over twenty minutes—Mack understood and responded to Detective Cedillo's questions, he was coherent throughout the entire interview, he implicated himself in the robbery only after Detective Cedillo showed him photographs taken from Lake Como's surveillance footage depicting him engaged in a struggle with Salley, and he told Detective Cedillo that he was sorry for what he had done. Nothing that occurred during the interview indicates that

5

Mack lacked the mental capacity to knowingly and voluntarily give his statement or to otherwise understand and waive his rights. At the hearing on the motion to suppress, Detective Cedillo testified that based on his observations, Mack's "ability to understand and observe what was going on and to make judgments" was not below average or impaired.

Considering the totality of the circumstances, we cannot conclude that Mack's oral statement was involuntary under either federal due process or article 38.22 standards. Accordingly, we hold that the trial court did not err by denying Mack's motion to suppress. We overrule Mack's sole point and affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 9, 2012

6